Same case; 3 *Harr.* 238.
CITED in *Clapp* v. *Ély,* 3 *Dutch.* 610.

---

JOHN DEN, EX DEM. WILLIAM ABRAHAMS v. JOHN ENGLISH, DAVID ENGLISH, HANNAH ENGLISH, THOMAS HOBERT, AND MARY HIS WIFE, LATE MARY ENGLISH, AND STILLMAN E. ARMS, AND REBECCA HIS WIFE, LATE REBECCA ENGLISH.

In *Ejectment* for lands in Monmouth.

D. E. devised his land to his grandson D. C. in fee; but if he happens to die before he arrives at the age of twenty-one years, *or* to have heirs of his

Den ex dem. Abrahams v. English et al.

body lawfully begotten, then the lands shall be given to his grand-daughter E. H. &c. *Held* that the word *or* must be understood to mean *and*, and *without* heirs, &c.

In his codicil D. E. provides that, if both his said grand children die before they come of age, or have lawful heirs of their body, his lands shall be equally divided between D. E. and another D. E., to them, their heirs and assigns forever. D. C. the first devisee attained the age of twenty-one years, and died without issue. *Held* that D. C. took a fee simple, with a limitation to E. H. by way of executory devise; but as the event to give effect to the limitation, did not happen, D. C's. estate became absolute.

D. C. devised all his estate, real and personal, to his father, for the term of his natural life, and after his decease, to be equally divided among the children of J. E., them, their heirs and assigns, forever. *Held,* that the remainder to such children, *vested* immediately upon the testator's death.

This case was submitted without argument upon the following state of the case, and briefs.

## STATE OF THE CASE.

The premises in controversy between the parties to this suit, consisting of a farm of about 177 acres, situate in Freehold township, Monmouth county, New Jersey, of which, David English died seized, on the          day of          and by last will, dated 1778, duly executed, devised the same as follows: " Item, I give and bequeath to my well beloved grandson David Combs, son of Joseph and Jane Combs Ellis English, all my lands, messuages and tenements, freely to be possessed by him and his heirs forever: together with one half of my pew in the north east corner of the new meeting house on White Hill; and one large bible; my wearing apparel, one gun, and one negro boy named Tom, as soon as he arrives at the age of twenty-one years; likewise it is my will, and I do order it to be so, that my well beloved grandson, David Combs shall not have it in his power to sell or dispose of any of the lands left him by me in any wise, before he arrives at the age of twenty-eight years." And in a subsequent part of said will, did further devise as follows:—
" Item, It is my will, and I do order it to be so, that if my grandson happens to die before he arrives at the age of twenty-one years, or to have heirs of his body lawfully begotten; that then the lands and other movables left him by me, shall be given

to Elizabeth Hendricks, my well beloved grand-daughter, and her heirs forever."

And in a codicil to said last will, dated 7th May, 1779, duly executed, to pass real estate, he the said David English the first, did further devise as follows, to wit: "Item, It is my will desire in case both my grandchildren before named should die before they come of age or have lawful heirs of their body, that all my lands and tenements be equally divided between David English, son of David English, late of Englishtown, dec. and David English, son of Jonathan English, dec. and in that case as aforesaid, I leave it to them, their heirs and assigns forever."— (*Pro ut* said will and codicil.)

That immediately upon the death of said David English, his grandson David Combs, named in said will, entered upon the premises therein devised to him and continued in possession thereof to the time of his death. That he the said David Combs attained the age of twenty-one years, but died before he arrived at the age of twenty-eight years, and without heirs of his body, he never having been married.

That after he arrived at the age of twenty-one years, and before the age of twenty-eight years; he made and executed his last will and testament, dated the 31st December, 1794, in due form of law, to pass real estate, and among other things therein, willed and devised as follows: "Secondly, I give and bequeath to my beloved father Joseph Combs, all my estate both in lands and movables; likewise my part of a pew in the new meeting house, during the term of his natural life; and after the decease of my said father Joseph Combs, it is my will and desire that the whole of my estate, both real and personal, be equally divided among the children of Doctor James English, them, their heirs and assigns forever." (*Pro ut* said will.)

That upon the death of said David Combs, in the year 1794, his father Joseph Combs went into possession, and continued in possession up to his death, on the        day of        1836. That after the death of said Joseph Combs, the executors of James English, dec. the second, (who was one of the children of Doctor James English, named in the will of David Combs,) obtained a decree in Chancery, for the sale of the real estate of James English second, dec., to carry into effect the will of the said James

English, dec.  That the executors of said James English, dec. exposed to public sale, all the right, title and interest of said James English second, dec. in the farm in controversy, as a portion of the real estate of James English, dec. the second.  And the same was struck off to the lessor of the plaintiff, and a deed from the executors duly made therefor, agreeably to law.  (*Pro ut* same.)

That said James English second, dec., one of the children of Doctor James English, was living at the date of the will of David Combs, and at his death ; but died during the lifetime of Joseph Combs, on the 7th day of May, 1834, leaving one child, who died an infant prior to the sale to the lessor of the plaintiff, and the death of said Joseph Combs.

It is further admitted by the parties, that Doctor James English the first, named in the will, after the death of David Combs, to wit, on the 13th day of July, 1811, did obtain for a valuable consideration, from William Stoney and Elizabeth his wife, formerly Elizabeth Hendricks, the grand-daughter named in the will of David English, dec. the first, a release to him, of all their rights and interest in the premises in controversy—(*pro ut* the same)—after the said Elizabeth had come of age and had lawful heirs of her body.

That the said Doctor James English the first, died leaving seven children, (some of whom were born after David Combs' death,) his heirs at law, to wit: David, John, Hannah, Mary, wife of Thomas Hobert, and Rebecca, wife of Stillman E. Arms, the defendant, and Elizabeth, wife of Abraham Suydam, who died in the year 1833, leaving children, and James English the second, under whom the lessor of the plaintiff holds.

Upon the above state of the case, it is agreed between the said parties, that if the lessor of the plaintiff is entitled to any part of the premises in dispute, then that he have judgment for the same with costs, but if he be entitled to no part thereof, then that judgment be rendered for the defendants, with costs.  Either party to be at liberty to turn this case into a special verdict, and bring a writ of error within two years.

*P. Vredenburgh, jr.* Attorney for plaintiff.

*Jos. F. Randolph,* Defendants' attorney.

---

*Vredenburgh,* for plaintiff.

First. We claim under the will of David English, and Elizabeth Hendricks.

Second. If our title under the will of David English is not good; then we claim under the will of David Combs.

First. Under David English's will. He died seized—this will dated        1778, provides as follows, viz : (*pro ut* the will and codicil.)

David Combs entered under the will        and died after he was 21, and before he had heirs of his body. Elizabeth Hendricks and husband, after his death, and after she attained the age of 21, and had heirs of her body, conveyed to Jas. English, 1st. He died leaving the defendants, and James English, 2d. his heirs at law. Jas. English seconds, executors, under order of Chancery, sold to plaintiff—plaintiff therefore stands in the place of one of the children of J. English, 1st. and if he had title, we have; and if E. Hendricks had title, Dr. English first, had title. The first question then is, what title Elizabeth Hendricks took under the will of Dr. English.

The will gives D. Combs a fee simple with executory devise, if he lived to 21 and had lawful issue of his body, then an indefeasible estate in fee simple; but if he died before 21, or had lawful issue, then to Elizabeth Hendricks.

He did die after 21, and before issue—the devise over, then took effect, and as Elizabeth Hendricks lived to 21 and had issue, she had indefeasible estate in fee simple.

Second. But if the Court should be of a different opinion and that the word " or " in the will of David English, meant " and," then we claim under the will of D. Combs.

The provisions in this will are (*pro ut* the same.) David Combs died before 28. Joseph Combs entered under will, and lived till 183–. Dr. Jas. English the 2d, one of the children of Dr. English 1st, was living at the death of D. C. and died in life time of Jos. Combs, the tenant for life.

The question is, what estate Dr. E. 2d took under the will of D. Combs. For if he had any estate, then the plaintiff holding as purchaser under him, is entitled to recover.

What estate then did Dr. English take under will of D.

Combs? He was one of the children of D. E. 1st, living at the time of the death of D. C. and dead before Jos. Combs.

The defendants will not contend that D. C. could not devise by reason of the clause in D. E.'s will, restraining him from selling before 28.

First. Because it would strike their title from under them, as well as from under us.

Second. This only restrains him from aliening in his life time, not from devising.

Third. If it did, the clause is void, as contrary to the nature of the estate, 4 *Kent*, 131.

What estate then passed by the will of D. C. to the children of Dr. Joseph English, the first?

We say that it was a vested remainder in those children of Dr. J. E. who were living at the death of the testator, subject to be opened to let in children born before the death of Jos. Combs.

Defendants say it was a contingent remainder, not vested till the death of Joseph Combs, and then only in those then living.

It is a remainder of some kind, 4 *Kent*. 203.

This is a devise of lands, not a bequest of personal estate.

It is a vested remainder. At the death of the testator, he had a right to make it either vested or contingent as he saw fit.

Whether it was vested or contingent therefore, must depend upon his intention as evidenced by his will.

A vested remainder is a present right of future enjoyment, 4 *Kent*, 202.

The court will construe the interest to be a vested remainder, unless the contrary clearly appears, 4 *Kent*, 203; and again, they will vest it at the earliest opportunity.

Now what is the exact phraseology of this will?

What is the natural import of the language of the will?

It goes to the children, in the present tense.

The future time is descriptive of the estate conveyed, not of the objects to whom given.

Suppose the language had been, " I give it to A for life, remainder to C's children."

It is a present gift to persons in *esse*.

The natural language, if it was intended to be contingent, would have been " then living," which are not there.

Again, if it was intended to be contingent, then contingent as to all.

If then they all died, the devise failed when it purports to convey the whole, and no devise over.

Again, it says, " equally to be divided between them share and share alike "—now if contingent, they all might die, or one might die, how then divide ?

If this had been to them by name, it would undoubtedly have vested, for it would be the technical language of a vested remainder, after estate for life, 2 *John.* 288.

But the difference, say our opponents, is, if the children are dead, they don't answer the description—neither do they where they are named, and die.

The testator did not mention their names, because he contemplated future born children.

The only difference between the two forms of expression, is, the general devise to children, lets in those born after the death of the testator, and before the tenant for life.

1 *Rop. L.* 392, 3, 4, 5, *and* 6 ; 2 *Str.* 1172 ; 9 *Ves.* 445 ; 3 *Har. Dig.* 2222, 2252 ; 1 *Cox*, 6, 72 ; 1 *Brown C. C.* 537 ; 3 *Brown C.* 401 ; 1 *Cox* 6, 432 ; 4 *Ter. Rep.* 39 ; 3 *Ter. Rep.* 484, 488 ; *Ives* v. *Legge* in note.

## AMERICAN CASES.

4 *John.* 61 ; 5 *Mass.* 535 ; 1 *Searg't. and Rawle,* 378 ; 4 *Kent,* 220 *note C;* 4 *Kent,* 205 ; 3 *Hal.* 103 ; *Metcalf's Dig.* 118 ; *sec.* 7 1 *Pick.* 147 ; 5 *Bin.* 607 ; *obt. Dict* ; 12 *Wend.* 83 ; 3 *John. Di.* 277.

The attention of the Court is called particularly to 4 *John.* 61 ; 5 *Mass.* 535 ; 1 *Seargt. and Rawle,* 378.

The cases cited on the other side are

First. Cases of mere personal legacies.

Second. All the cases hinge upon this principle, viz : Where a time of distribution is named, no children born after the period of distribution, can take—because the time of distribution having passed, it is presumed the property is divided.

But where one has died, no direct case can be found, even in a case of personal legacy, which does not pass his interest to his representatives.

*J. F. Randolph*, for defendants.

It is contended for the defendant, as follows, viz:

First. Under the will of David English, David Combs took a fee, subject to an executory devise. 3 *Hal.* 39.

Second. The restriction on the sale, till 28 years of age—being inconsistent with the estate, is void ; and can have no effect in this suit, at all events. 1 *J. C. R.* 220.

Third. D. Combs, dying without children, after he arrived at 21 years, is not to defeat the fee. To effect the object of the testator, the word " or " is to be construed " and." Both parties claim adverse to the executory devise, under an adverse possession of more than twenty years, 3 *Hal.* 43, 343.

Fourth. Under D. Combs' will, the property vested at the death of Joseph Combs the *cestuy que vie*, in such of Dr. English's children, as were then living. From the word " children " and the whole will, this is believed to have been the intent of the testator.

Where the enjoyment of a thing is postponed to a particular period or event, the persons *then* answering the description take. 1 *Cox, C. C.* 71, and note ; *Ib.* 327 ; 1 *B. and B.* 459.

The property does not vest till the event, and then in them only who *then* answer the description. 6 *Vez.* 50 ; 1 *Vez. Sr.* 111.

When given to a particular class, those answering that description at the time, take. 6 *Vez.* 43.

Under the word " children," grand-children (and of course devisees and alienees) cannot take. 4 *Vez.* 692 ; 3 *Vez. and Beam* 69.

Mr. *I. H. Williamson* on the same side.

There is no immediate devise to the children of Dr. English, and nothing is given them till the death of J. C. the devisee for life.

The words of the will are, " and after the decease of my said father J. C. it is my will and desire that the whole of my estate both *real* and *personal* be equally divided amongst the children," &c.

The gift is therefore a direction of what is to be done with the property, after the death of J. C.

The devise is not to the children *eo nomine*, but to them as a class or description of persons who are to take after the devise for life. And therefore those only can take, who are in *esse* and answer the description of children at that time, which excludes grand children.

1 *Cox Eq. Cases*, 327, *Ayton* v. *Ayton*; 1 *Ball* v. *Beatley*, 473, 476, 478, 483, *Crone* v. *Odell*; 3 *Atk.* 57, *Seamer* v. *Bingham*; 6 *Vesey*, 43, 50, *Godfrey* v. *Davis*.

The opinion of the Court, was delivered by

HORNBLOWER, C. J. The word " or " in the will and in the codicil of David English, must be understood to mean " and," in order to carry out the intention of the testator. He certainly did not mean, that if his grandson, the primary object of his bounty, died before he was 21 years of age, leaving lawful issue, the devise over should take effect. If the testator used the word " or " intelligently, then he intended that if his grandson died before he attained the age of 21, though he had lawful issue, then he should take only a life estate ; or if he lived to be 21, and died at last without such issue, then the devise over should take effect. But this could not have been his meaning. The devise in the will is plainly to David Combs in fee ; then follows the devise over, " if my grand-son happens to die before he arrives at the age of 21 years, or (happens not) " to leave heirs of his body lawfully begotten," then to his grand-daughter Elizabeth Hendricks and her heirs forever. Thus shewing an intention, in the first place to give the property to his grand-son in fee ; and secondly in the event of his dying under age, and without issue, then to his grand-daughter, in fee. By the codicil, the testator annexes a similar limitation to this latter devise, and provides, that in case the property comes to his grand-daughter, and she should die under age, *or* without lawful issue (undoubtedly meaning as before, *and* without lawful issue) to David English son of David English, late of Englishtown, deceased, and David English, son of Jonathan English, deceased, their heirs and assigns forever.

The devise to David Combs, then, could not fail, unless he not only died without lawful issue, but also under the age of 21 years. Both events did not happen. He lived until he was 21 years of age. He took then, upon the authority of *Den* v. *Taylor*, 2 *South.* 413, and the cases there cited, not an estate tail, but a fee simple, with a limitation over to Elizabeth Hendricks, by way of executory devise. But as the event upon which the devise over, was to take effect, never did happen, and never could, after the devisee attained the age of 21 years, the estate, then became absolute in him.

If therefore, the lessor of the plaintiff has title to any portion of the premises in question, it must be under the will of David Combs. He devised all his estate, real and personal, to his father Joseph Combs, for the term of his natural life, and then over, in the following words, viz : " after the decease of my father, it is my will that the whole of my estate, real and personal be equally divided among the children of Dr. James English, them, their heirs and assigns forever."

Dr. J. English, at the date of D. Combs' will, had several children, who are named in the case ; among the rest, one, named James English 2d. This son was living when D. Combs died, but died during the life time of Joseph Combs the tenant for life, leaving one child, who died an infant, prior to the acquisition of the title set up by the lessor of the plaintiff.

Upon the death of James English 2d, (which happened on the 7th of May, 1834) his executor sold, under a decree in chancery for the better execution of his will, all his title and interest in the premises in question, as a part of his real estate. The lessor of the plaintiff became the purchaser at that sale, and hence claims title to some portion of the premises in question.

Whether Jas. E. 2d, had any interest in the premises, depends upon the question whether the remainder, under the will of David Combs, was a *vested* or *contingent* remainder. If contingent only, the lessor of the plaintiff, acquired nothing by his purchase : but if the remainder was a *vested* one, then he has title to the share of Jas. E. 2d.

Upon this point there is in my opinion, no room to doubt. The remainder vested immediately upon the death of the testator, in the children of James English the 1st, who were then living and

Den ex dem. Abrahams v. English et al.

opened as occasion required, to take in such as were born after-wards and previous to the death of the tenant for life.

In *Doe* v. *Provost et al.* 4 *Johns.* 61, the case was much stronger in favor of contingencies; and yet Van Ness, Kent, Thompson and Yates, Justices, against Spencer, Justice, held it to be a vested remainder. In that case, the words, were "Immediate-ly after her death, I give the same unto and among all and every such child and children, as the said Christiana *shall have lawful-ly* begotten at the time of her death, in fee simple, to be equally divided, &c." The words upon which the dissent of Spencer, Justice, was based, (and I am inclined to think with good rea-son,) were, "*shall have* lawfully begotten, at the time of her death." Thus pointing to a class of persons, who might be in existence upon the happening of a certain event—It was not giv-en to Christiana's children; but to such child or children as *should have* been begotten by her at the time of her death. It was equivalent (perhaps) to saying, "to such child or children as she might have *living* at the time of her death." The time of her death, seems to have been named as the period, when the per-sons, who were to take, should be ascertained; for the testator could not have intended, by the use of these words, any thing so absurd, as to exclude children begotten by her, after her death.

But in this case, there are no words creating any such doubt, or susceptible of any such criticism. They are, "and after the decease of my father, to be equally divided among the *children* of Dr. James English, &c." This is equivalent to saying, "I give the land to my father and to the children of Dr. James E.; my father to have it during his life, and after his death, to be di-vided among the children of Dr. J. English.

The cases cited by the plaintiff's counsel, I think fully sustain him; at least such of them as I have examined. While those cited on the part of the defendants, although they may be good law, have no application, in my opinion, to case under consider-ation.

FORD, J., and WHITE, J. concurred.

DAYTON, J. and NEVIUS, J. gave no opinion, having been of counsel in the cause.

*Judgment for plaintiff.*

CITED in *Den, Hopper* v. *Demarest*, 1 *Zab.* 539; *Den, Holcomb* v. *Lake*, 4 *Zab.* 688; *Den, Holcomb* v. *Lake*, 1 *Dutch.* 611; *Moore* v. *Rake*, 2 *Dutch.* 591.