ALBANY,
February, 1809.

Doe, *ex dem.* BARNES and others, *against* PROVOOST
and others.

Doe
v.
Provoost.

THIS was an action of ejectment brought to recover the undivided one-fourth part of a house and lot in the first ward of the city of *New-York.* The cause was tried at the last sittings, and a verdict taken for the plaintiff, subject to the opinion of the court, upon the following case :

*Peter Praa* was seised in fee of the premises, and by his will, dated 5th *August*, 1739, devised as follows : " I devise to my daughter, *Christiana Provoost*, the dwelling-house and ground she now lives on, to hold the said house and ground for and during the term of her life ; and immediately after her death, I give the same unto and among all and every such child and children as the said *Christiana* shall have lawfully begotten, at the time of her death, in fee-simple, equally to be divided between them share and share alike."

It was admitted that the house and ground mentioned in the devise were the premises in question, and that the defendants were in possession.

It was proved, that under the devise, *Christiana* continued in possession until her death in 1798, leaving *Jonathan Provoost* her only surviving child, *the father of the defendants*, and that at her death, *Jonathan* entered into the possession of the premises, and remained in possession about eight years, and until his death ; and that he, by his last will, specifically bequeathed the premises to his heirs, who entered under it at his death. *Christiana* had four children by her husband, *David Provoost*, at the time of the will, and at the death of *Peter Praa*, and one of them, *Catharine*, died intestate before her mother, leaving the lessors of the plaintiff her heirs at law.

Upon this case, the point raised by the plaintiff was, that all the children of *Christiana* were entitled to a proportional part

P. devised lands to his daughter C. " during the term of her life, and immediately after her death, unto and among all and every such child and children as the said C. shall have, lawfully begotten at the time of her death, in fee-simple, equally to be divided between them, share and share alike." It was held, that the four children of C. who were living at the time of the devise, and at the death of the testator, took a vested remainder in fee, and that in case there had been any children born afterwards, the estate would have opened for their benefit ; and that the children of a daughter of C. who died in the life-time of her mother, were, therefore, entitled to the share of C. who was living at the death of the testator.

of the premises, and that their representatives are now entitled to it, although some of the children died before *Christiana.*

*D. B. Ogden,* for the plaintiff. The children of *Christiana Provoost,* who were living at the death of *Peter Praa,* took a vested remainder. This is the natural and obvious construction of the will, and the only one consistent with the evident intent of the testator. The testator gives to all the children, and to each child its proportional part. He meant to provide for *C. Provoost* and her issue : and all her children, whether living or not, would take at her death, the remainder being vested at the death of the testator.

\* 2 *Johns. Rep.* 288.

In the case of *Wimple* v. *Fonda,*\* such a devise was held to create a vested remainder.

† 2 *Vern.* 545.

In the case of *Cook* v. *Cook,*† it was decided that the words ' begotten,' and ' to be begotten,' are to be construed the same, and that though there was only one child living at the death of the testator, the estate should open and take in an after born son.

*T. A. Emmet,* contra. The question is whether there was a vested or a contingent remainder. It was, no doubt, the intention of the testator, to provide for any after-born children of *C. Provoost.* Where there is any person, *in esse,* capable of taking, the estate will vest, and open again as to the children after-born ; and where a contingent remainder is limited to several persons, it will vest in the person first becoming capable of taking, and open again as to any persons becoming capable

‡ *Cruise's Dig.* Tit. 16. c. 5. § 11.

during the continuance of the particular estate.‡ Yet if a man devise land to the children of *I. S.* no children

§ *Shep. Touch.* 418. (436.)

born after the death of the testator can take.§ In the case of *Wimple* v. *Fonda,* there was a person *in esse,* capable of taking at the time of the devise. Where a person devised land to his son for life, and after his death, to his son's

¶ *Goodright* v. *Dunham, Doug.* 264.

children, this was held to be a contingent remainder in fee.¶ The uncertainty of the words of description will

make a remainder contingent. Here the word ' *children*' is itself uncertain, and that uncertainty is increased by the words " lawfully begotten at the time of her death."* It was not the intention of the testator to provide for grandchildren; and grandchildren cannot take where there are children capable of taking at the time.† The words lawfully begotten necessarily qualify the word children. They are intended to exclude illegitimate children, and the true sense and construction is, such lawfully begotten children as *C. Provoost* shall have, at the time of her death. The use of the words, ' all and every such *child* and children,' evidently shows that the testator not only meant such children as should be living at the time of his death, but that he had in view a possible survivorship among the children.

ALBANY,
February, 1809.

Doe
v.
Provoost.

* 2 *Bos. & Pull.* 289. *Cro. Eliz.* 630.
† 2 *Vern.* 107.

VAN NESS, J. That the construction given to the clause of the will by the counsel for the plaintiff, accords with the intention of the testator, can hardly be doubted; and the only question is, whether he has made use of sufficient words to effectuate his intent?

It is a rule in the construction of wills, particularly of those inartificially and obscurely drawn, to advert, in order to discover the intention of the testator, to his situation, at the time of making the will, as to the number of his children, the different kinds of property of which he was seised, &c. (6 *Crui. Dig.* 158. and the cases there cited.) When this will was executed, the testator's daughter, *Christiana*, had four children; and, judging from the great length of time she lived after the date of the will, the testator undoubtedly supposed it probable that she might have several more. His intention was, and such, I think, is the fair construction of the words he has made use of, to give the property in question to his daughter, during her life, and to her descendants, after her death. But as a devise of the remainder to her children then born, would exclude any children she might afterwards have, he has, by the terms of his will, endeavoured to guard against such an

event. On the part of the lessors of the plaintiff it is insisted, that upon the testator's death, the whole estate vested at the same time; namely, an estate for life in his daughter, and a remainder in fee in her children then living; and, that in case *Christiana* should have borne any other child or children, after the date of the will, that the estate in remainder would open for the purpose of letting in "such child or children" for their share. On the part of the defendants it is admitted that, upon the death of the testator, *Christiana* took an estate for life; but it is contended, that the remainder was contingent, and did not vest until her death; and that then it went to her surviving child, under whom the defendants claim.

This latter construction of the will is extremely harsh, and opposed not only to the justice of the case, but, in my opinion, to the manifest intention of the devisor. The effect of it would be to exclude the grand children of *Christiana* altogether; and it ought therefore not to be allowed, unless the words of the devise admit of no other reasonable interpretation. I think the devise does admit of another construction, and one perfectly warranted by the words in which it is expressed.

The word *begotten* is here used as synonymous with the word *borne;* and, substituting the latter word, the will would read thus: "Such child or children as the said *Christiana* shall have lawfully borne at the time of her death." These latter words, "at the time of her death," evidently signify the same as, *in her life-time.* If the words, "at the time of her death" in the will, be taken in the sense here stated, and the words, "shall have begotten," be considered as a verb in the future tense, the result will be the same; the devise will then read thus: "such child or children as the said *Christiana* shall have lawfully begotten (or borne) in her life-time." The word "begotten" in this view of the case is, indeed, liable to some criticism, but the sense in which the testator has here used it, cannot be misapprehended. In adopting this interpretation, I cannot perceive that any violence is done to the words of

the will itself; the whole of which, on the contrary, is thus rendered plain and intelligible, every presumption of a limitation in favour of the surviving heirs is repelled, and the clear intent of the testator effectuated.

The result of this construction is, that, upon the decease of the devisor, *Christiana* took an estate for life, and her four children then living took a vested remainder in fee : and, in case there had been any after-born child or children of *Christiana*, the remainder would have opened for their benefit, so that the property, in the language of the will, might be equally divided between them, share and share alike.

To give effect to the construction set up on the part of the defendants, we are compelled to add to the devise the word " surviving," and to read it thus : such *surviving* child or children as she may have, lawfully begotten, at the time of her death. This would make the remainder contingent, because of the uncertainty of the person who is to take ; as it was unknown which, or whether any of the children of *Christiana*, would survive her. But it is an established rule, that the court never construes a limitation into an executory devise, when it may take effect as a remainder, nor a remainder to be *contingent*, when it can be taken to be *vested*. (6 *Crui. Dig.* 444. s. 11. 3 *Term Rep.* 488. *Ives v. Legg*, in note.)

This rule applies with peculiar force to the present case and greatly increases my repugnance to the construction insisted upon by the defendants. Here, consistently with the terms of the will, it may be so construed as to give to the children of *Christiana*, born at the date of the will, a vested remainder. And, can there be any hesitation, in furtherance of the intent, to adopt such a construction, more especially when the rights of the grandchildren are saved thereby, who would otherwise be entirely excluded?

In *Oates, ex dem. Hatterly*, v. *Jackson*, (2 *Str.* 1172.) the devise was to the wife for life, and after her death to her daughter *Isabella*, and her children on her body begotten, or to be begotten, and their heirs in fee. *Isabella*

the daughter, at the time of making the will, had one daughter, and afterwards two sons and another daughter, all of whom she survived. It was held that *Isabella* took as joint tenant with all her children, as well that born at the time of making the will, as those born afterwards; and that it was no objection to the vesting of the estate in the children, because it commenced at different times. The words " to be begotten," used in this case, do not distinguish it from the one under consideration; because, " begotten," and " to be begotten," in the construction of wills and settlements, signify the same thing. This has been frequently so decided. (*Cook* v. *Cook*, 2 *Ver.* 545. 2 *P. Wms.* 426. *Hunt* v. *Ireland.*) In the case of *Doe, ex dem. Willis and others*, v. *Martin*, (4 *Term Rep.* 39.) the lands by a marriage settlement were conveyed to trustees, to the use of the wife for life; remainder to the use of the husband for life, remainder to the use of the children of the marriage, *or such of them, &c.* as the husband and wife *should appoint;* and, for the want of such appointment, to the use of every the child or children equally in fee. There were several children of the marriage, and no valid appointment having been made, it was held, that *all* the children took a vested, and not a contingent remainder. But the case of *Doe* v. *Perryn*, (3 *Term Rep.* 484.) is perhaps more exactly in point, though I think it a stronger case than the present. There the devise was to the niece of the testator, then a *feme covert*, for life, remainder to trustees, to preserve contingent remainders, remainder to all and every the children of the niece, begotten, or to be begotten, on her body, and their heirs, to be equally divided between them, with divers other remainders, for default of issue of the niece. The niece had no issue till after the death of the testator, and then she had three children. It was held, notwithstanding, that the estate *vested* on the birth of the first child of the niece, and that it afterwards opened for the benefit of the children subsequently born. The reasoning of *Buller*, J. in this case is very forcible: He says, " but if this (the estate) were held not to vest till the death

of the parents, this inconvenience would follow, that it would not go to grandchildren; for if a child were born, who died in the life-time of his parents, leaving issue, such grandchild could not take, which could not be supposed to be the intention of the devisor." In the case before us, the estate in remainder vested immediately upon the death of the testator, *Christiana* having four children then living; and nothing has occurred since to divest it, for there was not even the birth of another child. (See also the cases of *Ives* v. *Legg*, and particularly, 1 *Vez. jun.* 174. *Cunningham* v. *Moody*. 1 *Inst.* 188. *a. Har.* and *But.* note 72. tit. *Tenants in Common.*) Some of these cases arose upon deeds, but the same rule prevails in the construction of wills. A devise of lands operates as an appointment to uses, in nature of a legal conveyance. (*Cowper*, 304, 305. *Hogan* v. *Jackson.*)

I am of opinion, therefore, that the intention of the testator, as fairly deducible from the will, was, after the death of his daughter *Christiana*, to give this property to all her children, born, or to be born after the date of the will; that the children upon the death of the testator, took a vested remainder, and consequently, that the plaintiff is entitled to judgment, for an undivided fourth part of the premises in question.

KENT, Ch. J. THOMPSON, J. and YATES, J. were of the same opinion.

SPENCER, J. *Peter Praa* was seised in fee of the premises in question, which he devised as follows : " *Item*, I give and bequeath unto my daughter *Christiana Provoost*, the dwelling-house and ground she now lives on, to hold the said house and ground for and during the term of her life, and immediately after the death of the said *Christiana*, I give the above devised premises unto and among all and every such child and children as the said *Christiana Provoost* shall have lawfully begotten at the time of her death, in fee-simple, equally to be divided between them, share and share

ALBANY,
February, 1809.

Doe
v.
Provoost.

alike." Under this devise, *Christiana* continued in possession until her death in the year 1798, leaving *Jonathan Provoost*, her only surviving child, and father of the defendants ; and who on her death entered into possession, and continued therein until his death, prior to which he specifically devised the same, and the devisors entered.

*Christiana Provoost* had four children by her husband *David Provoost*, at the time *Peter Praa* made his will, and at the time of his death ; and one of them, *Catharine*, died before her mother, leaving the lessors of the plaintiff her heirs.

Is the remainder devised after the determination of the life estate, vested or contingent ? If it be of the former kind, then it was capable of alienation, or descent ; if of the latter, then the ancestor of the lessors, not being *in esse*, at the determination of the particular estate, took nothing by the devise. After the fullest consideration given to this question, my opinion is, that the remainder is contingent, and that none of the children of *Christiana* took any thing by the devise, unless living at her death. The devise is clearly contingent, as to the children who might be born of *Christiana* after the devise ; but that circumstance, I admit, does not give a decisive character to the remainder, with respect to those who were *in esse* at the time ; for it is well settled, that a vested remainder is subject to open on the birth of children, or the happening of events designated by the devisor.

There are no cases precisely parallel to the present ; and I say, in the language of Lord Chief-Justice *Wilmot*, that cases upon wills have no great weight, unless they are exactly to the very point, and similar, in every respect, to the case before the court. I am ready to admit, that the leaning of courts, if courts ought to lean, should be in favour of vested remainders. But if this doctrine be carried too far, we should not only distort and violate the words employed by devisors as signs of their ideas, but we should obliterate from our books all traces of distinction between vested and contingent remainders. The law benignly supposes, that

wills are made *in extremis*; it does not, therefore, exact the same technical nicety in wills as in deeds; but the rule is, to read the will, and, by its language and its evident intention, to collect its sense and meaning, and then to carry that intention into effect, if, consistently with the rules of law, it can be done. In interpreting this will, I conceive it my duty so to construe it, as to avoid absurdities, and to pay particular attention to the state of things when it was made. The devisor had a daughter then married, who had four children; he contemplated the probability or possibility that this daughter might have other children, that her husband might die, and that she might have illegitimate children; he contemplated also the possibility, that of the four grandchildren then living, some of them might die before their mother. I say all these events were contemplated by the testator, because the will evidently points to them all. The remainder is not devised to such children as *Christiana* should have, but to such child and children as she should have, clearly indicating, that it entered into his intention, that if by death there should be but one surviving child, then the remainder should go to that one. The remainder is given not only to such child and children as *Christiana* should have, but to such child and children as she should have lawfully begotten; thus clearly manifesting an intention to exclude illegitimate children, and admitting the possibility that she might have such. And then, as I read the devise, the remainder is given to such legitimate child or children as *Christiana* shall have at the time of her death; or, in other words, to such legitimate children of *Christiana* as shall be living at the time of her death. In common *parlance*, "having children," when applied to any particular period, denotes children living. If it had been asked of *Christiana*, just before her death, 'how many children have you?' The answer would have been, 'three.' Had the querist wished to have known more, and to have ascertained how many children she had borne, he would have put a different question, by asking, 'how many children have you had?' To maintain, that the devisor meant to give the

ALBANY,
February, 1809.

Doe
v.
Provoost.

remainder to all the children that should be born of *Christiana*, without reference to their being living at the time of her death, and without making that the contingency, leads to great absurdities; it supposes, that the testator considered her capable of begetting children, a quality not attributable to females; and the testator must be presumed either to have introduced the words " at the time of her death," without any meaning, or to have meant to exclude from inheriting, those children which she might beget after her death. If meaning is to be given to the words, " at the time of her death," it appears to me impossible to give them any other construction, than to consider it an epoch, by which the testator meant something; and by referring this back to such child and children as his daughter should have, evidently means, such as she should have living at the time of her death.

I can never agree to reject words employed in a will, when they can have a sense and operation; and much less can I agree to construe words in such a manner as to produce absurdity, and make a testator speak nonsense. We have no right fancifully to substitute one mode of expression for another. We have no right to make a new will, but can only expound it upon known rules of construction, without violating the plain and obvious intent of the devisor.*

The case of *Doe* v. *Perryn*† is supposed to bear strongly on this case. But it is very distinguishable from it. There the devise was to *Dorothy Comberbach* for life, remainder to trustees to preserve contingent remainders, remainder to all and every the children of *Dorothy Comberbach*, begotten or to be begotten on her body by *J. Comberbach*, and their heirs for ever, to be equally divided between and among such children. The devisor then devised over the estate, if *Dorothy* died without issue. *Comberbach* and his wife had no issue at the time of the testator's death; they had three children, who died without issue, and in the life-time of their parents. The question was, whether any interest vested in the children of *Dorothy*. It was contended, that if the children of *Dorothy* took a fee, the limitation over

* 2 Eq. Ca. Abr.
315. A. (4.)
9 Mod. 159.
† 3 Term Rep.
484.

took effect, on the failure of issue of *Dorothy*, at the death of the survivor of *Dorothy* and her husband. The court were unanimously of opinion, that there was nothing in the will to limit the devise to such children as were living at the death of the survivor of *Dorothy* and *James*; and *Ashhurst*, J. decides that case on this precise point, 'that there was nothing in the will to show, that the devise must necessarily be confined to children living at the decease of their parents.

In the present case, it is manifest to me there are such words, and that the devisor's intention is clear, that the remainder should enure to such legitimate children only, as *Christiana* should have, living at the time of her death. If this will be read without the words " lawfully begotten," there could be no doubt; these words can have no other operation than to denote the intention, that the child and children the testator meant to provide for, should be legitimate.

The struggle with my brethren seems to be, to make the grandchildren of the testator also objects of the devise, and to give such a construction to the will, so as not to exclude the issue of the child of *Christiana*, who died in her life-time. Had the testator denoted an intention to provide for his grandchildren, I should have tried very hard to effectuate that intent; but I see no such intention in the will. In every view of the subject, I am confirmed in the opinion, that this remainder is contingent, and that, as the event on which the interest of the lessor's ancestor depended, did not happen, by her being alive on the death of *Christiana*, the defendant is entitled to judgment.

*Judgment for the plaintiff.*