DENNIS V. STIMSON, as EXECUTOR, etc., et al., Respondents, v. FREDERICK C. VROMAN, as Executor, etc., Appellant.

Where the decree of a surrogate settling the accounts of an executor is, on appeal to the General Term, reversed, so far as it charges the executor with certain items, on the ground that he is not properly chargeable therewith, and the decree is remitted to the surrogate for resettlement in accordance with the decision of the General Term, its judgment is final so far as relates to any judicial action, and so, is appealable to this court.

J., at the time of his death, owned a house and lot situate in the city of S., and a mortgage of $2,000 executed to him by his son-in-law S., who resided in that city ; he also owned a house and lot in the city of B., and stock of a bank in that city, of the par value of, $2,500, and a note of $250 against his son F., who resided in B. Aside from a small claim against S. he owned no other property. By the first clause of his will, after payment of his debts, he gave to his wife and E., an unmarried daughter, living at home, the use and income of the house and lot in S. during the life-time of his wife, also $500 per annum to be paid by his executors out of the income of his estate, the same to be in lieu of dower. He directed his executors on the death of his wife to sell said house and

lot and out of the proceeds to pay to E. $3,000, to three grandchildren, named, $100 each, to his daughter M., wife of V., $1,800, and to his daughter C., wife of S., said $2,000 mortgage, and whatever remained he directed to be equally divided among his daughters.  By the second clause in the will he gave the "house and lot, bank stock and other securities" in B. to his three sons in certain proportions specified.  S. and F. were appointed executors.  On settlement of their accounts as such it appeared that F. had paid to his mother, to apply upon the annuity, all the income of the Brooklyn property, including his note, deducting some small sums of debts paid and for expenses, and there remained a balance still due her.  S., as executor, had assigned to his wife the mortgage given by him, claiming it to be a specific legacy, and that the widow and E. were not entitled to resort to the same to make up their annuity.  *Held* untenable ; that the provision for the widow was the dominant one to which all the others were subordinate ; that the mortgage should be entered as a portion of the assets of the estate, and S. was accountable for the interest thereon during the life of the widow to make up the annuity.

The testator, some three months prior to his death, gave his check for $100 to S., who drew the money thereon.  It appeared that the testator was a snug business man, substantially out of debt and not a borrower of money.  S. gave no proof that he rendered the testator any service, or sold him any property for the $100, and he at the time owed more than that amount of interest on his mortgage then due or soon to become due, and when told by the other executor that he found the claim for the $100 due from him to the estate, he made no reply.  *Held,* that while resting upon the check alone the legal presumption would be that it was given in payment of a debt, the circumstances justified a finding that it was a loan.

(Argued March 14, 1885; decided April 14, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made May 1, 1883, which reversed in part a decree of the surrogate of the county of Schenectady, on the final accounting· of Dennis V. Stimson and Frederick C. Vroman, as executors of the will of John N. Vroman, deceased.

The facts so far as material are stated in the opinion.

*Alexander J. Thomson* for appellant.  The surrogate did not err in ruling that the payment of the $2,000 mortgage was postponed until after the widow's death and the interest thereon was to be applied toward the payment of her annuity of $500.

(*Doe* v. *Provost*, 4 Johns. 61 ; *Schulters* v. *Johnson*, 38 Barb. 80.) As it is evident the testator supposed himself to have a clear and sufficient income from his estate, to pay his wife the annuity of $500, and for the purpose of furnishing it to her, used "clear and decisive terms," such annuity cannot be cut down or taken away except by "express words or clear and undoubted implication." (*Freeman* v. *Coit*, 96 N. Y. 63 ; *Roseboom* v. *Roseboom*, 81 id. 356 ; *Pierrepont* v. *Edwards*, 25 id. 128.) When, upon an examination of a will, taken as a whole, the intention of the testator appears, and the clear and definite purposes of the testator are endangered by inapt or inaccurate modes of expression, the court may, and it is its duty, to subordinate the language to the intention. The object of the court is to obtain the correct meaning and wishes of the testator. (*Phillips* v. *Davies*, 92 N. Y. 199 ; *Pond* v. *Bergh*, 10 Paige, 140 ; *Mason* v. *Jones*, 2 Barb. 229.)

*S. W. Jackson* for respondents. The judgment in question is a mere interlocutory judgment and not a final determination, and is not appealable to this court. (Code, § 190 ; *Walker* v. *Spence*, 86 N. Y. 167 ; *Raynor* v. *Raynor*, 94 id. 250 ; *Catlin* v. *Grisler*, 57 id. 363.) A bequest of the proceeds of a certain bond and mortgage is a specific legacy. (*Gardner* v. *Printup*, 2 Barb. 83.) A bequest of a bond and mortgage includes all the interest accruing thereon after the death of the testator. (*Beavan* v. *Cooper*, 7 Hun, 117 ; Dayton's Surrogate.) The bequest of the annuity of $500 to Mrs. Vroman and Elizabeth Vroman is a general legacy and is subject to abatement with the other general legacies. (*Matter of Williams*, 12 N. Y. Leg. Obs. 179.) Declarations out of court, whether made by a party or by another in his hearing, and not denied by him, are not to be construed as admissions of any thing beyond the popular meaning of the language employed. (*Lansing* v. *Stone*, 14 Abb. 109.)

EARL, J. The testator, John N. Vroman, died in May, 1874, leaving a will executed in February, 1873, in which the

respondent, Dennis V. Stimson, and the appellant, Frederick C. Vroman, are nominated executors. The will was admitted to probate and letters testamentary were issued to the executors in October, 1874. The disposing portions of the will are contained in two clauses as follows :

"*First.* After all my lawful debts are paid and discharged, I give and bequeath unto my wife, Catharine, and my daughter, Elizabeth, the use and income of the house and lot wherein I now reside, during the life-time of my said wife, together with the sum of five hundred dollars yearly, *and every year, by my executors hereafter named, out of my income, of my estate,* the same to be in lieu of dower, and at the death of my said wife I will and direct my executors to sell my said house and furniture, and out of the proceeds of such sale, to pay my said daughter Elizabeth, the sum of three thousand dollars ($3,000), and further to pay the sum of one hundred dollars ($100), to Kate, daughter of my deceased son Nicholas, and one hundred dollars ($100) each to my two grand-daughters, Maria M. and Kitty Vedder, whenever they find sufficient money in their hands to do so, and if either of my three grand-daughters should not be living, I will that theirs shall be equally divided between the survivors. And I further will and direct my executors to pay my daughter, Mary Vedder, the sum of eighteen hundred dollars ($1,800), and to my daughter, Catharine Stimson, a mortgage I hold against her husband, Dennis V. Stimson, for the sum of two thousand dollars ($2,000), and whatever may remain after paying the above legacies, to be equally divided between my daughters Mary, Elizabeth and Catharine.

"*Second.* I will and bequeath unto my three sons my house and lot, bank stock, and other securities in the city of Brooklyn, to be divided as follows: To my son Frederick C., five thousand dollars ($5,000), in consideration of his faithful services during his minority, and to my son William the sum of one thousand dollars ($1,000). The balance of the said Brooklyn property to be equally divided between my three sons, Frederick, William and John. And if there should not be

sufficient property to *pay all of my bequests*, then each legatee is to share the deficiency in proportion to the several sums divided to them. And I further will and direct, that if I should sell the property in Brooklyn the proceeds of such shall be divided as above stated."

At the time of his death the testator owned the house situated in the city of Schenectady mentioned in the first clause with the furniture therein, and he also owned the house situated in Brooklyn, mentioned in the second clause, and he owned no other real estate. He also owned the mortgage for $2,000 mentioned in the first clause, executed to him by the executor Stimson who resided in Schenectady, and bank stock of the par value of $2,500 of the Commercial Bank of Brooklyn, and a note for $1,250 against the executor Vroman, who resided in Brooklyn; and it does not appear that he owned any other personal property aside from a claim for $100 against the executor, Stimson, for money loaned a short time before his death, which will be hereafter noticed; and he owed but a trifling amount of debts.

In the fall of 1879 the executors rendered their accounts as such to the surrogate of Schenectady county, and it then appeared that the executor, Vroman, had paid to his mother, the widow of the deceased, to apply upon her annuity, all the income of the Brooklyn property, including his note, after deducting certain small payments for debts and for funeral and other expenses, and that there remained a balance still due her. It also appeared that the daughter, Mrs. Stimson, had claimed the mortgage as a specific legacy to her, and that her husband as executor had assigned it to her, claiming that she was entitled to it at once, and that the widow and daughter Elizabeth were not entitled to resort to the interest upon the same to make up the amount of their annuity. The surrogate held, against the claim of Mr. and Mrs. Stimson, that Mr. Stimson should enter the mortgage in his account as a portion of the assets of the estate, and that he was accountable for the interest upon the same during the life of the widow, and also that he should be charged with the sum of $100 borrowed of the testator with the interest upon the same, and he so provided in

his decree. From that portion of the decree Mr. and Mrs. Stimson appealed to the General Term of the Supreme Court, where the decree as to that portion was reversed, and it was held that Mrs. Stimson, under the will, was entitled to the mortgage as a specific legacy free from the payment of any interest thereon, and also that the evidence was not sufficient to charge Mr. Stimson with the sum of $100 as a loan to him from the testator, and the court ordered the proceedings to be remitted to the surrogate for a resettlement of his decree in accordance with its judgment. The executor Vroman, the widow and other legatees then appealed to this court from the judgment of the General Term so far as it reversed the decree of the surrogate.

The point is taken on the part of the respondents that an appeal to this court was not authorized, because the judgment of the Supreme Court was not final. But it was final so far as pertained to any judicial action. There was to be no further litigation or judicial inquiry, and no further exercise of judicial discretion. Every thing was finally settled and determined. The further action of the surrogate was simply to conform his decree to the judgment of the Supreme Court. In such a case the judgment of the General Term is so far final as to justify an appeal to this court. (*Produce Bank* v. *Morton,* 67 N. Y. 199.)

As to the mortgage, the case is not free from difficulty. The will is very unskillfully and bunglingly drawn, and we must arrive at the intention of the testator as well as we can; and for that purpose in such a case we may consider all the circumstances surrounding the testator when he made the will, such as the situation of his family and the nature and value of his estate, not to put new language into the will, but to get out of the language the sense which the testator really meant to embody therein. (*Doe* v. *Provoost,* 4 Johns. 61; *Shulters* v. *Johnson,* 38 Barb. 80; *Goodhue* v. *Clark,* 37 N. H. 525.)

It does not appear that the testator's wife had any estate of her own, and it was evidently his main purpose to make provision for her. As the daughter Elizabeth was unmarried,

living at home and was probably expected to live with and care for her mother, she was included in the provision made for the widow. In *Thurber* v. *Chambers* (66 N. Y. 42), Chief Judge CHURCH said, that "it is a general rule that provisions in a will intended for the support of the wife will receive the most favorable construction to accomplish the purpose intended."

The testator had three sons and three daughters. He treated his dwelling-house, the furniture therein and mortgage against Mr. Stimson as his Schenectady property, and he meant that his daughters should ultimately have that. He treated the other house, the bank stock and the note against his son Frederick as his Brooklyn property, and he meant that his sons should ultimately have that. If the mortgage is to be treated as a specific bequest, taking effect in possession at once, then the Brooklyn property, which is given in substantially the same language, is to be treated in the same way. If the mortgage is not required to contribute to the annuity, then the Brooklyn property, for precisely the same reasons, is not required to contribute, and thus there would be no income out of which the annuity could be paid. So the widow would have a home to live in and nothing whatever for her support. It cannot be believed that the testator intended to make a purely formal and illusory provision for his widow, while he gave the bulk of his property at once to his children, all adults and all presumably more able to earn a support than she was. It is not to be supposed that the testator meant to make a provision by the annuity for his widow in lieu of her dower, and at the same time to make it wholly delusive by giving away the entire estate out of which the annuity could be paid.

The provision for the widow is the dominant one, and all the others are subordinate to it. The annuity is charged upon the entire estate, and the other dispositions are made subject to that charge. The will is to be so construed as to give effect to all its parts, and the provision that the annuity is to be paid out of the entire estate must have effect.

All the legacies in the first clause, except perhaps the legacy of $100 each to his three grandchildren, were intended to take

effect upon the death of the wife. It is plainly so as to the legacy of $3,000, to Elizabeth, which in terms is ordered to be paid out of the proceeds of real estate to be sold after the widow's death. It must have been intended that the legacy of $1,800, to Mrs. Vedder, should also be paid out of the proceeds of the same real estate, as there was no other property out of which it could be paid, and hence the payment of that legacy was deferred until after the widow's death; and it is clear that the mortgage was to be " paid " or delivered to Mrs. Stimson at the same time, as it is given in the same language and in the same sentence with the legacy to Mrs. Vedder. The residue mentioned in the first clause had reference to the residue of the proceeds of the house and lot and furniture, and that residue is payable immediately after the discharge of the specific legacies, and they cannot be discharged until after the death of the widow.

We are, therefore, of opinion that the executors are required to hold the mortgage during the life of the widow, and to use the income from the same to make up the annuity of $500. In case the mortgage should be paid, then the proceeds will represent it, and the income of the same will be taken during the life of the widow, and at her death the $2,000 must be paid to Mrs. Stimson in lieu of the mortgage.

As to the $100, claimed to have been loaned by the testator to the executor Stimson on the 20th day of February, 1874, we are of opinion that the loan was sufficiently established. On the day mentioned the testator gave Stimson his bank check for $100, and he drew the money on it. Resting upon the check alone the legal presumption would be that it was given in payment of a debt. But here all the circumstances and the other evidence rebut that presumption. The condition of the testator's estate at his death shows that he was a snug business man, not a money borrower, and substantially out of debt. It may be inferred that Stimson was not a money lender, and he gave no proof that he rendered the testator any service or sold him any property for the $100. It cannot be supposed

that the testator borrowed $100 of one who owed him $2,000, or that he paid that sum to Stimson upon any debt, when at the date of the check Stimson owed him more than that sum for interest upon the mortgage presently due or soon to become due, which he in fact subsequently paid up to May first thereafter. The daughter Elizabeth testified that after her father's death she asked Stimson if her father had not given him the $100, and told him that her father had said that he was always borrowing money, and he did not see what he did with it, and that he made no reply. The executor Vroman testified that about the time of taking the inventory of the estate he spoke to Stimson about the check, and told him in substance that he found that claim due the estate from him, and that he made no reply. Both of the witnesses were persons interested in the estate, who had the right to know the truth from Stimson. He was fairly called upon, in response to their questioning, to divulge the truth. He was not only speechless then, but he was speechless at the hearing before the surrogate when he was competent to deny or explain what those witnesses had testified to. Upon all this evidence and the circumstances, we think the probabilities are very strong that the $100 was a loan to Stimson and not the payment of a debt, and hence that the surrogate properly charged him with the same with interest.

We, therefore, reach the conclusion that the judgment of the General Term, so far as it reversed the decree of the surrogate, should be reversed, and that the decree of the surrogate should be affirmed, with costs to the appellant against the respondents, Mr. and Mrs. Stimson, in the Supreme Court and this court.

All concur.

Judgment accordingly.