In re VAN VLIET.

(5 Misc. Rep. 169.)

(Surrogate's Court, Greene County.    September, 1893.)

WILLS—CONSTRUCTION—BEQUEST OF MONEY "IN BONDS."

Testator bequeathed certain sums of money "in government bonds." At the time of making the bequest, and until his death, he owned government bonds, the par value of which equaled the aggregate amount of such legacies. At testator's death the bonds were at a premium. *Held*, that the bequest was general, and the legatees were entitled only to the sums named in the will, to be used in buying government bonds, and not to the bonds at their par value.

Final accounting of the executor of the will of J. Levi Van Vliet, deceased.

John B. Bronk, (Jennings & Chase, of counsel,) for executor.
F. H. Osborn, for residuary legatees.

SANDERSON, S.    In the second clause of the will of J. Levi Van Vliet, deceased, he gave to his uncle Charles Hinckley, and his aunt Maria Hinckley, the sum of $3,000 in government bonds, the same to be divided between them, share and share alike.    By the third clause he gave to Maria Myers the sum of $3,000 in government bonds, and in the fourth clause he gave to the "Board of Foreign Missions," and to the "Board of Domestic Missions," of the Reformed Church of New York, the sum of $1,500 in government bonds, each one-half of the same, to be forwarded to them by and through the consistory of the Second Reformed Church of Coxsackie, N. Y.    At the time of giving instructions for drawing his will, the testator had before him government bonds to the amount of $7,500, par value.    He then separated them into two or three piles, one of which corresponded with one of the legacies in the will.    These bonds were a part of his estate at the time of his death, and were the only government bonds held by him at that time, and probably at the time of drawing the will.    They were inventoried at a premium of 15 per cent., amounting in all

to $8,625. In the account of the executors as rendered, they have credited themselves with the above amount, paid in government bonds, to the several legatees above named. The residuary legatees have filed objections to the account, and claim that said legatees should have received their several legacies in money, amounting in all to $7,500, and that the premiums on the government bonds, amounting to $1,125, are a part of the estate to be divided among the residuary legatees.

The legacies in question are not specific, for the reason that they are primarily gifts of money, and also because the government bonds are not stated in the will to be a portion of the testator's estate. "Unless the language describes, points out, and identifies the particular thing given as a part of the testator's estate, distinguishing it from all other things of the same kind, then it is not specific. Although the testator may, at the time of executing the will, have an article or articles of the same kind as that which he purports to give, still, unless his language is sufficient to refer to, designate, and identify the very article itself as forming a part of his estate, which he thereby gives, the legacy is not specific, but general. Under these circumstances the word 'my' is often operative in identifying the article." 3 Pom. Eq. Jur. § 1130, notes 1 and 3. In Tifft v. Porter, 8 N. Y. 516, the testator owned 360 shares of Cayuga County Bank stock. In his will he gave 240 shares of the capital stock of Cayuga County Bank to his wife, to be delivered to her as soon as may be after letters testamentary shall have been issued on his will, and he also gave 120 shares of the same stock to Harriet S. Glover, to be transferred to her as soon as may be after letters shall have been issued. It was held that these legacies were general, and not specific. The court says: "But the mere possession by the testator, at the date of his will, of stock of equal or larger amount than the legacy, will not of itself make the bequest specific."

In the case before us we have gifts of money in government bonds. This language is not sufficient to make these legacies demonstrative, for the reason that it is not pointed out in the will that the money is to be taken out of any particular fund belonging to the estate. This latter qualification is an essential element of a demonstrative legacy. 3 Pom. Eq. Jur. § 1133. The clear meaning of the will is that the money given is to be used in obtaining bonds, and then to be delivered in the manner provided in the will. Undoubtedly, the legatees, being of full age, could receive the money in place of the bonds. In Re Newman, 4 Dem. Sur. 65, the legacy was of money "in government bonds," and the conclusion reached was that the bequest was general, and not specific or demonstrative. It is claimed by counsel for the executors that what took place at the time of giving instructions for drawing the will shows that it was the intention of the testator to give the legatees government bonds at par, and that these circumstances may be considered, in connection with the will itself, for the purpose of determining its meaning. There is nothing in the will that indicates that such was his intention. Courts

find little difficulty in transposing words and phrases, rejecting words and inserting them, when it is ascertained from the will itself that the true effect can be given to the will in no other way. In such cases the will itself suggests the words and phrases to be stricken out or added. Says an eminent writer: "Equity has a very narrow jurisdiction to correct mistakes in wills, but only when the error appears upon the face of the will itself, so that both the mistake and the correction can be ascertained and supplied by the context, from a plain interpretation of the terms of the instrument as it stands. A resort to extrinsic evidence is never permitted, either to show a mistake or to ascertain the correction. Mistakes which can be thus corrected may be in the names of legatees or devisees, in the description of property, or in other terms." 2 Pom. Eq. Jur. § 871. In note 1 to the above-quoted section the same writer adds: "When evidence of circumstances is admitted to explain an ambiguity, this is not for the purpose of correcting a mistake." And again, in the same connection: "If a word or clause is to be supplied, the necessity for such a supply, and also the very word or clause itself to be supplied, must appear from the face of the will."

In the case at bar we have the fact of the ownership by the testator, at or about the time of drawing the will, of government bonds of the face value of $7,500, and of the separation of these bonds into several piles, one of which corresponded with one of the legacies. From these facts, counsel for the executors claim that the will should be read as though the words "at par" were inserted after the words "government bonds," in every instance where they occur in the will. Whatever inference may be drawn from these circumstances, it is certain that, when the testator reduced his intentions to writing, the words he used do not admit of the construction now sought to be put upon them. His original intention has become merged in the writing, and parol evidence is not admissible for the purpose of contradicting or varying it in any way. In re Keleman, 126 N. Y. 73, 26 N. E. Rep. 968. When the meaning of the will is obscure and doubtful, we may, in order to discover its meaning, but not to put new language into it, advert to the situation of the testator in life, the number of his children, value of his property, etc. Doe v. Provoost, 4 Johns. 61; Stimson v. Vroman, 99 N. Y. 74, 79, 1 N. E. Rep. 147; De Nottebeck v. Astor, 13 N. Y. 98; Brill v. Wright, 112 N. Y. 129, 19 N. E. Rep. 628. The provisions of the will in question do not bring it within the rule laid down in this class of cases. We conclude, therefore, that the executors should be allowed credits upon this accounting to the amount of the money bequeathed to the several legatees in the 2d, 3d, and 4th clauses of the will.