In the Matter of the Judicial Settlement of the Accounts of JOHN E. LEE, as Executor, etc.

JOHN E. LEE, Appellant; JOSEPH N. DWIGHT, by CHARLES DAY, Guardian, etc., Respondent.

C., a widow, died leaving a son ten years of age her sole heir and next of kin. Her will, after some trifling bequests, contained this clause: " I will and bequeath to John E. Lee all debts, dues and demands of name, nature and kind soever I hold against him and his wife, my trunk and any keepsakes he may wish." The residue of her estate she gave to her son, to be invested by a guardian provided for, and the interest used for the education and support of her son. Mrs. Lee owed to the testatrix $53 upon a chattel mortgage on " saloon furniture," and $170 on what was called a chattel lien executed by her on certain horses in her possession and used by her husband as her agent. The testatrix also owned a bond and mortgage of $1,262, executed by Mrs. Lee on the purchase by her of the land mortgaged; her husband joined in the bond. This land Mrs. Lee had sold previous to the execution of the will, conveying the same by warranty deed clear of incumbrance. The purchaser, however,

retained the amount of the bond and mortgage and paid only the balance of the purchase money. This was known to the testatrix when she executed the will. The estate of the testatrix netted for distribution less than $6,000. After her death, by direction of Lee, who was the executor of the will, the purchaser of said land handed to Mrs. Lee the part of the purchase money so retained, who at the same time paid it over to the executor and received a discharge of the mortgage. *Held,* that the bequest to Lee did not include said bond and mortgage.
Reported below, 65 Hun, 524.

(Argued December 20, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 21, 1892, which affirmed a decree of the Surrogate's Court of Allegany county settling the accounts of John E. Lee, as executor of the will of Carrie E. Dwight, deceased.

The facts, so far as material, are set forth in the opinion.

*William H. Henderson* for appellant. The decision of the Surrogate's Court in holding that the testatrix did not intend to bequeath the · indebtedness which she then held against John E. Lee and his wife, represented by the bond and mortgage in question to John E. Lee, was erroneous. (1 Redf. on Wills, 415; Schouler on Wills, § 472; Williams on Executors, § 1080; *Champlain* v. *Champlain,* 58 N. Y. 620; 112 id. 308; Code Civ. Pro. § 2545; *Wadsworth* v. *Lyon,* 93 N. Y. 201; *Quinn* v. *Hardenbrook,* 54 id. 83; *Wood* v. *Mitcham,* 92 id. 375; *In re Denny,* 2 Hill, 223; *Vedder* v. *Vedder,* 1 Den. 257; *Smith* v. *Bell,* 6 Pet. 68; *Cottman* v. *Grace,* 112 N. Y. 299.)

*Clarence A. Farnum* for respondent. The testatrix did not give to John E. Lee the sum secured to be paid by the bond and mortgage from the Lees to Farnum and by Farnum assigned to her. (Schouler on Wills, § 479; *Quinn* v. *Hardenbrook,* 54 N. Y. 83; *Scholle* v. *Scholle,* 5 Barb. 312; *Mann* v. *Mann,* 14 Johns. 1; *Stimson* v. *Vroman,* 99 N. Y. 74; *Delaney* v. *Van Aulen,* 84 id. 16; *Lynes* v. *Townsend,* 33 id. 558; *Wood* v. *Mitcham,* 92 id. 375; *Knowlton* v. *Atkins,*

134 id. 313; *Roosevelt* v. *Fulton*, 7 Cow. 71; *Anderson* v.
*Schoppe*, 84 Maine, 170; *Bills* v. *Putnam*, 64 N. H. 544.)

FINCH, J.   It is not at all uncommon, both in the construc-
tion of statutes and of wills, to find language broad and gen-
eral enough to include things not really contemplated or
intended, and creating an emergency in which the courts are
permitted to say that the doubtful matter, though within the
words, is not within the spirit and meaning of the phrase to be
construed.   The courts below have applied that solution to a
dispute in the case at bar over the scope and meaning of a
bequest to the appellant which reads thus:  "I will and
bequeath to John E. Lee all debts, dues and demands of
name, nature or kind soever I hold against him and his wife,
my trunk and any keepsakes he may wish," and have con-
strued the language as not intended to cover a bond and mort-
gage made by Lee and his wife and assigned to the testatrix
before her will was made.   We are at liberty to consider the
circumstances surrounding her when she made that will, and
read it in the light which they throw upon it; not to deter-
mine what she ought to have done, but to ascertain what,
within her purpose and intention, she really did.   (*Stimson* v.
*Vroman*, 99 N. Y. 74.)   The testatrix was a widow, having
one son, an infant about ten years of age, who was her sole
heir at law and next of kin, and was in possession of an estate
amounting, as inventoried, to a trifle over $7,000.   Included
in it were a debt due from Emma A. Lee upon a lease dated
in 1885 for the sum of $170, and a claim against her for $53
upon a chattel mortgage.   There was also included a bond
and mortgage on which was due at the date of the inventory
$1,246, and the history of which is set forth in the record.

Edward J. Farnum conveyed to Emma A. Lee, in April of
1885, a parcel of land in Pennsylvania, taking a bond and
mortgage for the purchase money.   The bond was signed by
the mortgagor and John E. Lee, her husband.   In September
of 1887, Farnum assigned the bond and mortgage to Mrs.
Dwight, the testatrix.   In April, 1888, Mrs. Lee and her hus-

N. Y. Rep.]    Opinion of the Court, per FINCH, J.

band conveyed the mortgaged land to one S. E. Crittenden for the sum of $2,300, by a warranty deed, free and clear from all incumbrance.   While the purchaser did not in form assume the outstanding mortgage, he in fact deducted and kept back the amount due upon it, and paid down only the excess.   So much of his purchase money as would balance the sum unpaid on the mortgage, he never paid to his grantors at all except formally and for an obvious purpose.   When Crittenden came to pay, he had his own protection in view, and did not mean to depend on a mere personal covenant of very doubtful utility, and was careful to have his final payment at the same moment extinguish the mortgage, for he says that he talked with the executor about paying it, and that it was by the latter's direction that he handed the money to Mrs. Lee, the executor at the same time giving a receipt in discharge of the mortgage. Passing the money formally through the hands of the wife altered in no respect the actual fact, but was supposed to be a needed ceremony.   So that while the papers in form gave Crittenden only the protection of the covenants in his deed, the transaction in fact was an assumption of the mortgage as part of the purchase price.   To that extent his land was bound, and he stood practically debtor to Mrs. Dwight.   That the situation was known to her must be inferred from the lapse of time during which it continued, from the relation of agency subsisting between her and Lee, and from the fact that Crittenden paid her through Lee the interest on the mortgage, the latter receipting for it in her name.   That receipt was dated April 12th, 1889, which was about three months before the will was made.   It does not appear what, if anything, Lee, as an individual, owed Mrs. Dwight at the latter date, but that is not very material in view of the facts which are inferentially disclosed.   The chattel mortgage for $53 was on certain "saloon furniture," and its existence indicates an impecunious condition of its proprietor.   It is not shown who kept the saloon, and it may have been Mrs. Lee, either in form or in fact, though her husband wore the general character of agent, and if he did business at all, seems to have

done it under cover of her name, a fact which indicates the possibility of unsatisfied creditors. He said at first that he did not sign the chattel mortgage, but later modified his confidence into a statement that he did not "think" he did, but was "not positive," and adds that at the time of Mrs. Dwight's death, the saloon furniture was in "*our*" possession." Some truth is inferable from the use of that pronoun "our." What the "chattel lease" was, on which Mrs. Lee owed the $170, it is not easy to understand. Lee says: "Lease was on some horses;" "were given to her husband four or five years ago;" and again, "My wife had the horses in her possession. She owned them, so far as I know, except for lease." The nature of the transaction is not quite clear, but it evidently enabled the husband to use the horses as agent, while his wife occupied the legal position of owner. On these facts, we cannot fail to see that Mrs. Dwight, looking only at what appeared, and unversed in the legal arrangements by which husbands become agents for wives who are owners, naturally regarded both debts as those of the husband and wife jointly, and may have been right in so doing, and did not puzzle over their separate relation to each, and so in her will, meaning to forgive the debts effectually, spoke of them as due from Lee and his wife.

But did she mean more than that? Did she intend also to give them the bond and mortgage which she knew Crittenden was to pay without in fact requiring of them the actual disbursement of a single dollar? Technically the bond was a debt of theirs, but substantially the land in the hands of Crittenden was the debtor, and was amply sufficient to yield the amount due. The two small debts might easily be forgiven, since their collection at all was scarcely to be expected, and the bequest seemed trifling in view of that probability; but the mortgage was perfectly secure, and could be collected in full without causing to Lee and his wife the sacrifice of any sum. The gift of that would simply take from the infant son about one-fifth of the very little which the mother had to give him, and for the benefit of strangers. How strongly she felt for

the child is evident from the tone of the will. She speaks of him as her dear and beloved son; she gives him the whole residue and remainder after what she supposed to be a few slight gifts to others; she provides for a guardian who shall invest his portion, and use the interest for his education and support; and yet we are asked to believe, as argued out from general words, that this same mother, from an estate which nets for distribution only $5,994, deliberately intended to take away from her child, poorly provided for at the best, the sum of $1,262, to be given, not to mother or sisters, but to strangers. One shrinks from such an unnatural conclusion, and looks about him to see how words capable of such a construction came to be used. I think we can see how. In the mind of this widow, untrained in the rules of law, the mortgage was a specific article of personal property held in her manual possession as much as if it had been an organ or trunk, articles which she bequeathed by name. Very commonly among the people, and even sometimes among lawyers and judges, the incident has usurped the place of the principal, and the conception of a debt has been overlooked in the presence and tangible character of the security. It is the mortgage and not the bond that is deemed the property and thing of value, and so if this testatrix had intended a gift of the mortgage she would naturally have given it as such and specifically, and not left it to be inferred from general words giving debts and demands. And still less would that form of expression convey to her mind the idea of a gift of the mortgage when she regarded that as the debt of Crittenden, and of the land in his hands, and had ceased to think of it as involving a debt of Lee and his wife at all.

Sometimes the maxim *noscitur a sociis* helps us to an understanding of the real meaning intended, and with its aid it becomes quite apparent that in the clauses preceding the gift of the entire residue and remainder to her infant son, the testatrix meant to give only slight and trivial things which would be of little use to her child and which could be spared without injury to him and without any serious diminution of the

whole estate to be given to him. She provides for a burial lot and headstone. She gives to Effie Dwight, " my organ, family bible, one set of silver teaspoons, one bed and bedding ; " to Mrs. Goff, " two oil paintings and willow rocking chair ; " to her sister, Mrs. Hulbert, " all my wearing apparel ; " and then follows the gift to Lee of debts supposed to be extremely doubtful at the best, " my trunk, and any keepsake he may wish." A construction which interjects into this sequence of kindly gifts, which would scarcely deplete the full estate intended for the son, a bond and mortgage for over $1,200 is unexpected and a surprise. The sudden elevation from a chair and clothing to such a mortgage, and the instant drop from that height to a trunk and some trifling keepsake is extremely odd and strikes one as unnatural. I do not think it was meant or intended at all, and am quite prepared to assent to the conclusion of the surrogate and the General Term that the bequest to Lee did not cover or carry the bond and mortgage.

The judgment should be affirmed, with costs against the appellant personally.

All concur, except BARTLETT, J., not sitting.

Judgment affirmed.